# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES D. HECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-257-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant James D. Heck requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 4, 1960, and was fifty-three years old at the time of the administrative hearing (Tr. 37). He completed his GED, and has worked as a tanker-trailer truck driver, general maintenance worker, and truck driver (Tr. 25, 182). The claimant alleges inability to work since February 6, 2012, due to spots on his lungs (Tr. 181).

## Procedural History

On December 10, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 26, 2014 (Tr. 16-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), finding that he could lift/carry/push/pull

twenty pounds occasionally and ten pounds frequently and sit/stand/walk each for six hours in an eight-hour workday, but that he could only have occasional use of foot and hand controls, overhead reaching, kneeling and climbing ramps and stairs; frequent stooping and crouching; but that he could never crawl or work around unprotected heights or moving mechanical parts, and that he should avoid an environment where there are temperature extremes. Furthermore, he stated that time off tasks would be accommodated by normal breaks, but that the claimant did require a sit/stand option which allows for a change in position at least every thirty minutes for a brief positional change lasting no more than three to four minutes at a time (Tr. 21). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, cashier, arcade attendant, and small product assembler (Tr. 25-25).

## Review

The claimant contends that the ALJ erred: (i) in his RFC analysis with regard to mental limitations, and (ii) by failing to properly consider the medical evidence, specifically with regard to weighing a consultative examiner's opinion and treatment records. Because the ALJ does appear to have erred in assessing the evidence with regard to the claimant's RFC, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of lumbar disc disease, mild degenerative joint disease of the right shoulder, and history of drug abuse (Tr. 18). The medical evidence in the record is sparse, so the claimant was sent for two separate consultative examinations. At the administrative hearing, the claimant testified

that he had no insurance or money to pay for healthcare, and that he had "an old, blind physician" in Colgate, Oklahoma that treated him (Tr. 47, 54).

On February 15, 2013, Dr. William Cooper, D.O., conducted a physical examination of the claimant. Upon exam, he noted that the claimant had no hearing deficit to normal conversation, but that he had a mild scolotic curve of the thoracic spine with the apex at T8 and pain with range of motion testing of the lumbar spine, as well as tenderness to palpation of the upper back bilaterally and pain with range of motion testing of the lower back on the right (Tr. 253). Additionally, he noted that the claimant's gait was slower than normal, but appeared safe and stable, with no limp or use of assistive device (Tr. 253). Dr. Cooper assessed the claimant with right ear deafness, chronic low back pain, chronic right flank pain (etiology unknown), and past history of drug abuse (Tr. 253).

On September 18, 2014, Dr. Harold Zane DeLaughter, D.O., conducted a history and physical examination of the claimant (Tr. 264). He noted that the claimant's deep tendon reflexes were 2/4 except right patellar and Achilles were 1/4 (Tr. 265). He noted the claimant moved frequently around the room due to pain and numbness, and nearly fell when standing from a seated position, and that he had limited and painful range of motion of the spine (Tr. 265). Furthermore, he noted that the claimant ambulated with a very unstable, shuffling gait at decreased speed but without the use of assistive device, and assessed him to be a significant fall risk (Tr. 265). He assessed the claimant with back pain, most likely due to a herniated disc with nerve impingement and resulting neuropathy/radiculopathy to the right leg, as well as suspected right shoulder

impingement syndrome, either due to slap tear or rotator cuff tear or other (Tr. 266). An x-ray of the lumbar spine revealed disc space narrowing at L5-S1, and an x-ray of the right shoulder revealed early degenerative changes at the acromioclavicular joint, and that he had an approximately 5x3 cm oval subcutaneous density lateral to humeral head which bulges the skin slightly, and therefore recommended a CT or MRI for further evaluation (Tr. 277).

That same day, Dr. DeLaughter completed a physical Medical Source Statement as to the claimant's ability to do work, which he indicated applied from 2012 through the time that he completed the assessment (Tr. 267-272). In it, Dr. DeLaughter indicated that the claimant could never lift/carry weight because he was a fall risk, and that he could stand ten minutes each at one time for sitting, standing, and walking, and up to three hours each in an eight-hour workday (Tr. 267-268). He further indicated that the claimant lays down due to severe back pain and leg numbness and needed a cane but did not have one (Tr. 268). He also indicated that the claimant could never reach overhead with the right arm, and only occasionally, in all other directions, but that he could continuously do so with the left hand (Tr. 269). Additionally, he indicated that the claimant could only occasionally use foot controls with the right foot due to right leg radiculopathy (Tr. 269). He stated that the claimant could occasionally climb stairs and ramps, but that he was a fall risk, and that he could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl (Tr. 270). He found that the claimant could never work around unprotected heights (fall risk) or extreme cold and heat, and that he could not walk a block at a reasonable pace on rough or uneven surfaces (Tr. 272).

State reviewing physicians determined that the claimant's physical impairments were nonsevere and that treatment for a mental impairment had not been recommended or received and that further development was therefore curtailed (Tr. 65-66, 71-72).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. At step three, he found that had mild restriction of activities of daily living, moderate difficulties in social functioning, and mild difficulties with regard to concentration, persistence, and pace, with no episodes of decompensation (Tr. 20). At step four, he made no findings regarding mental impairments, and included no mental limitations in the claimant's RFC. He found the claimant's testimony to be exaggerated and not credible. As to Dr. Cooper's and Dr. DeLaughter's assessments, the ALJ provided a summary of each of their exam findings, as well as the x-rays of the lumbar spine and right shoulder (Tr. 22-23). The ALJ then noted that the claimant's medical treatment had been "somewhat sporadic" and asserted that "any individual experiencing the pain and debilitating limitations that he alleges" would have found a way to seek treatment, further asserting that the claimant had not alleged lack of insurance or finances and that the claimant had made no effort to avail himself of free or low cost medical treatment programs (Tr. 23). He further asserted that if the claimant had been able to obtain money to illegally purchase meth until 2010 and Lortab until 2012, he should have been able to find money for medical care (Tr. 23-24). As to Dr. DeLaughter's MSS, the ALJ summarized his opinion but stated that there was a lack of objective clinical or laboratory findings to support his opinion and that it was also inconsistent with the claimant's self-reported activities of daily living, although he did

not specify which ones (Tr. 24). He then gave little weight to Dr. DeLaughter's opinion. He then ultimately determined that the claimant was not disabled.

The claimant argues that the ALJ erred in his analysis with regard to Dr. DeLaughter's mental status examination, and the Court agrees and reverses on this basis. As part of this discussion, the Court points out the ALJ's additional error with regard to his lack of analysis of Dr. Cooper's opinion (which lends support to the argument for reversal), but notes that the basis for reversal here lies in the ALJ's error with regard to Dr. DeLaughter's opinion. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ provided a summary of Dr. Cooper's consultative examination but made no attempt to analyze it under the required factors. As to Dr. DeLaughter's consultative examination, he stated that he gave the opinion little weight, but again failed to conduct the proper analysis. *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). The ALJ attempted to discuss some of the factors, but ignored the consistencies that existed between Dr. Cooper's exam findings and Dr. DeLaughter's, particularly related to the claimant's slow gait and tenderness and pain with range of motion testing of the lumbar and thoracic spines, as well as his findings regarding the claimant's ability to reach with the uninjured left hand. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Moreover, the ALJ declined to adopt the opinions from the state reviewing physicians, leaving open the question of what the ALJ *did* rely on in formulating the claimant's RFC. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). As such, the ALJ failed in his duty to perform the proper analysis of all opinions in the record, including the opinions of both Dr. Cooper and Dr. DeLaughter, at step four.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**